UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

ATLANTIC NY AGV, LLC,

                    Plaintiff,

          v.

VISION BUICK GMC, LLC, *et al.*,

                    Defendants

───────────────────────────────────

**DECISION AND ORDER**

6:25-CV-6047 MAV CDH

## INTRODUCTION

Plaintiff Atlantic NY AGV, LLC ("Plaintiff") asserts claims of (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious interference, (4) promissory estoppel, and (5) fraud in the inducement against defendants Vision Buick GMC, LLC, PJD Automotive, LLC, PJD Hyundai East, LLC, PJD Hyundai West, LLC, Vision Hyundai of Webster, LLC, PJD Canandaigua, LLC, PJD, LLC, Vision Nissan of Canandaigua, LLC, DMD Nissan West, LLC, Nissan of Webster, LLC, Vision Auto Outlet, LLC, Vision One Management, Inc., Daniel E. Edwards ("Edwards"), Mario Marino, Edwards Reinsurance Company, Ltd., and Vision Automotive Reinsurance Company, Ltd. (collectively "Defendants"). (Dkt. 1; Dkt. 12). Plaintiff's claims arise out of alleged misrepresentations that occurred when the parties entered into an Asset Purchase Agreement ("APA") regarding the purchase of various automobile dealerships. (Dkt. 1; Dkt. 12).

Currently pending before the Court are Plaintiff's motion to enforce a subpoena duces tecum served on non-party Brian Mark ("Mark") (Dkt. 32) and Plaintiff's

motion to compel Defendants to respond to its discovery demands (Dkt. 39). For the reasons that follow, Plaintiff's motion to enforce its subpoena is denied and Plaintiff's motion to compel is granted.

## BACKGROUND

This case has been referred to the undersigned for all non-dispositive pretrial matters. (Dkt. 19). The operative pleading is the second amended complaint. (Dkt. 12).

On February 25, 2022, Plaintiff entered into the APA with defendants Vision Buick GMC, LLC, PJD Automotive, LLC, PJD Hyundai East, LLC, PJD Hyundai West, LLC, Vision Hyundai of Webster, LLC, PJD Canandaigua, LLC, PJD, LLC, Vision Nissan of Canandaigua, LLC, DMD Nissan West, LLC, Nissan of Webster, LLC, Vision Auto Outlet, LLC, Vision One Management, Inc., Edwards, and Marino ("Sellers") to purchase "certain assets and liabilities" of 11 entities running Sellers' car dealerships. (Dkt. 12 at ¶ 23). Plaintiff' alleges that Defendants violated the APA, including by misrepresenting Mark as a 25% owner of defendants PJD Canandaigua, LLC, and PJD, LLC (the "PJD Entities") "to inflate their profitability," causing Plaintiff to "overpay for the Dealerships assets[.]"(*Id.* at ¶¶ 32-33).

## I.   The Mark Subpoena

Mark is the former general manager of the PJD Entities. (Dkt. 37 at ¶ 4). Before Plaintiff commenced the instant lawsuit, Mark filed an action in New York state court (the "NYS Litigation") against defendants Edwards, PJD Canandaigua, LLC, PJD, LLC, and non-party PJD Canandaigua Properties, LLC, (the "NYS

Defendants"), alleging in part that the NYS Defendants excluded him from the negotiations of the APA, failed to seek his consent or signature on the transaction documents, and underpaid him for his interest in the PJD Entities. (Dkt. 37-1 at ¶¶ 4-6; *see also* Dkt. 32-2 at 4; Dkt. 37-3 at 7).

On July 25, 2025, Plaintiff served Mark with a subpoena duces tecum, requesting three categories of documents:

> any and all discovery provided and/or received by you in connection with the action entitled <u>Mark v. Edwards, et al.</u> (Monroe Cnty.) Index No. E2023009203;

> any and all Documents . . . relating to or supporting your claims in the action entitled <u>Mark v. Edwards, et al.</u> (Monroe Cnty.) Index No. E2023009203 which are also related to the Asset Purchase Agreement which makes up the basis for this action and Index No. E2023009203; and

> any and all communications between you and defendants in the above-captioned action . . . that concern Atlantic NY AGV, LLC's purchase of numerous assets of those defendants pursuant to the Asset Purchase Agreement which makes up the basis for this action and Index No. E2023009203.

(respectively, "Request No. 1," "Request No. 2," and "Request No. 3") (Dkt. 32-4 at 2; Dkt. 37 at ¶ 16).

The subpoena set a return date of August 8, 2025. (Dkt. 32-4 at 3). On August 4, 2025, Plaintiff and Mark held a meeting "to discuss the scope and timing of the subpoena[.]" (Dkt. 32-2 at 5; *see also* Dkt. 37-3 at 10). During this meeting, Mark's counsel explained that, regarding Request No. 1, Mark could only produce documents received in response to his own demands because the defendants in the NYS

Litigation had not served discovery demands.[1] (Dkt. 32-2 at 5). Plaintiff and Mark also subsequently agreed to extend Mark's time to respond to the subpoena. (Dkt. 32-7 at 4; *see also* Dkt. 32-2 at 6; Dkt. 37 at ¶ 17).

On September 2, 2025, Mark served written responses to the subpoena, which included general objections such as that "many of the Requests [were] unduly burdensome . . . [,] s[ought] documents and information available from other less burdensome sources" such as Edwards, and they would unfairly allow Plaintiff to use discovery developed by Mark who initiated the NYS Litigation before the instant action. (Dkt. 32-6 at 3-4). In response to Request No. 1, Mark included a production of bates-stamped documents comprised of the documents Edwards produced to Mark in the NYS Litigation.[2] (*Id.* at 5).

Mark specifically objected to Request No. 2 "on the grounds that it was[s] overbroad and s[ought] documents and information not reasonably calculated to lead to the discovery of relevant and/or admissible evidence . . . [,] information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege . . . [,] [and] documents in the possession, custody, or control of Plaintiff and/or no longer in the possession, custody, or control of Mr. Mark, because he no

---

[1]    Mark specifically contends that while Edwards' attorneys did produce limited discovery, Edwards himself failed to respond or permit his attorneys to search his records. (Dkt. 37-3 at 8-9; Dkt. 37 at ¶¶ 13, 17).

[2]    Mark's production was a single 10,274-page PDF. (Dkt. 32-6 at 5; *see also* Dkt. 37-3 at 11).

longer ha[d] access to the email account associated with his former employer," which Mark believed to now be under Plaintiff's control. (*Id.* at 5-6).

Mark levied the same objections as above in response to Request No. 3, but also objected on the grounds that the request was unduly burdensome to the extent it sought communications between Mark and Defendants that "c[ould] be obtained via party discovery directed to those defendants." (*Id.* at 6). Mark also claimed he lacked responsive materials because he was excluded from communications regarding the APA. (*Id.*). Despite these objections, Mark asserted he "w[ould] consider supplementing" his responses to Request No. 2 and 3 when discovery in the NYS Litigation closed. (*Id.* at 5-6).

On September 17, 2025, Plaintiff sent a letter asking Mark to supplement his responses to Request No. 2 and 3 by September 24, 2025. (Dkt. 32-2 at 6; Dkt. 32-8 at 2-3; *see also* Dkt. 37 at ¶ 22). Mark refused this request and instead proposed to supplement his production "on the earlier of (1) 14-days after those disclosures were made in the NYS [Litigation], (2) the closing of fact discovery in the NYS [Litigation], [or] (3) the close of discovery in th[e] [instant] matter." (Dkt. 37-3 at 13 (internal quotation omitted); Dkt. 32-2 at 6). Thereafter, the parties continued to discuss their respective positions regarding the subpoena to no avail. (Dkt. 32-2 at 7; Dkt. 37 at ¶ 23; Dkt. 37-3 at 13, 19-20). Plaintiff eventually requested Mark's compliance by October 17, 2025. (Dkt. 32-9 at 2; Dkt. 37-3 at 13).

When Mark failed to supplement his responses, Plaintiff filed a motion on October 21, 2025, to enforce the subpoena, hold Mark in contempt, and require him

to pay Plaintiff's reasonable attorney's fees and costs incurred in bringing the motion. (Dkt. 32-2 at 11; Dkt. 32 at 1). Specifically, Plaintiff argues the Court should grant its motion because: (1) Plaintiff's document requests seek relevant information (Dkt. 32-2 at 5, 8); (2) Mark failed to file a motion to quash (*id.* at 8); (3) Mark does not levy substantive objections to the requests but instead objects on the ground that they seek the same documents he has yet to disclose in the "first filed" NYS Litigation (*id.* at 8-9); (4) Mark cannot successfully argue that producing documents here will prejudice him in the NYS Litigation because he must eventually produce the same documents in that case (*id.* at 10); and (5) the NYS Litigation is progressing too slowly for Plaintiff to accommodate Mark's proposed supplementation dates while also complying with this matter's case management deadlines (Dkt. 32-2 at 7, 10; *see also* Dkt. 32-3 at ¶ 16).

On November 19, 2025, Mark filed his opposition, arguing that further compliance with the subpoena would force him to produce attorney work product, constitute an undue burden, and prejudice him in the NYS Litigation. (Dkt. 37-3 at 14-17). Mark's opposition also asks the Court to award him the reasonable attorney's fees and costs incurred in opposing the Plaintiff's motion to enforce. (*Id.* at 5). Plaintiff filed a reply on November 26, 2025. (Dkt. 38).

## II.    **Plaintiff's Outstanding Discovery Demands**

In this action, Plaintiff served Defendants with interrogatories and requests for production of document on June 20, 2025 (the "Discovery Demands"). (Dkt. 41 at ¶ 3; Dkt. 41-1). On September 5, 2025, after Plaintiff consented to multiple extensions

of time to respond, Defendants produced some documents but informed Plaintiff that they were "searching for additional documents that may be responsive to the Request[s] to the extent they are not provided here," and further advised Plaintiff that they would "provide . . . the answers to the interrogatories shortly." (Dkt. 41 at ¶¶ 7-8; Dkt. 41-4). On October 27, 2025, after Defendants did not supplement their partial response to the Discovery Demands, Plaintiff submitted a letter to the undersigned requesting a conference to address the dispute. (Dkt. 41 at ¶ 10; Dkt. 41-6).

The Court held a telephonic conference on November 5, 2025, wherein defense counsel represented that he would serve the outstanding interrogatory responses and additional responsive documents within two weeks. (Dkt. 36). However, on November 20, 2025, Plaintiff submitted a letter advising the Court that it had not received Defendants' responses or documents. Plaintiff proceeded to file the instant motion to compel on November 26, 2025, seeking responses to its interrogatories and complete production of responsive documents. (Dkt. 39).

On December 22, 2025, Defendants filed a response "in opposition to" Plaintiff's motion to compel, consisting solely of a declaration by defense counsel. (Dkt. 44). Defense counsel's declaration states that "Defendants have not willfully failed to respond to the Discovery Demands," but "[a]dmittedly, . . . have not, as yet, responded to Plaintiffs First Set of Interrogatories," and that defense counsel's "review of Defendants' files was ongoing and . . . Defendants would produce additional documents in their possession." (*Id.* at ¶¶ 5-9). According to defense counsel, the

primary issue delaying Defendants' response is that defendant Edwards—"the individual that has knowledge of relevant documents and information regarding the facts of this case"—is suffering from severe health issues, including multiple forms of cancer, and "is consumed with almost daily doctors' visits and hospitalizations." (*Id.* at ¶¶ 10-12). Nevertheless, defense counsel represents that he had recently spoke to Edwards, and "[b]arring any unforeseen complications, . . . reasonably anticipate[d] that Defendants can respond to the Discovery Demands on or before January 5, 2026," but "[t]o the extent that is not possible, [he] will advise the Court." (*Id.* at ¶¶ 13-15).

Plaintiff filed a reply on December 29, 2025, stating that should the Court "accept" Defendants' proposed January 5th deadline to respond to the Discovery Demands, "Defendants should be held strictly to it, in that, if they fail to serve a substantive production and/or answers to Interrogatories, their Answer will be stricken and Plaintiffs will be granted leave to seek a default judgment." (Dkt. 45 at 4).

On January 6, 2026, one day after Defendants' proposed date by which they would respond, Plaintiff advised the Court that "Defendants still have not responded to the Discovery Demands" and did not provide "any prior heads-up that discovery would not be produced." (Dkt. 46 at 1). Plaintiff requested that the Court, in addition to granting the relief sought in the motion to compel, "strike Defendants' Answer and grant Plaintiff leave to file a motion for default judgment." (*Id.*).

On March 2, 2026, Plaintiff filed a letter requesting a "status conference when,

*inter alia*, Plaintiff will seek leave to file a motion for default judgment or for other appropriate sanctions against Defendants." (Dkt. 47). The Court entered a Text Order declining to set a status conference, as it was "unclear from Plaintiff's letter whether it [was] seeking to address an issue distinct from those raised [in the pending motion to compel]." (Dkt. 48).

On March 30, 2026, Plaintiff filed another letter, updating the Court that Defendants were "still in default of their discovery obligations" and had "not once . . . contacted Plaintiff to even explain their severe delinquencies." (Dkt. 49 at 1).

## DISCUSSION

### I.    Plaintiff's Motion to Enforce Subpoena

#### A.    Legal Standard

"Federal Rule of Civil Procedure 45 allows a party to serve a subpoena for production of documents on a non-party." *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 296 (E.D.N.Y. 2024). "Rule 45(d)(2)(B)(i) provides the mechanism for a motion to compel production . . . pursuant to a subpoena." *Cuomo v. New York State Assembly Judiciary Comm.*, 683 F. Supp. 3d 258, 268 (E.D.N.Y. 2023) (internal quotation marks omitted).

"A party . . . responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). When determining whether a non-party subpoena imposes an undue burden, courts in this Circuit consider several factors, including: "(1) relevance; (2) the party's need for the information; (3) the breadth of

the request; and (4) the burden imposed." *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 252 (W.D.N.Y. 2018) (citation omitted). Courts also consider "the time period covered" by a subpoena, "whether the requested information can be obtained from the parties themselves[,]" *Kochan v. Kowalski*, No. 19-CV-251W(SR), 2022 WL 3648023, at *1 (W.D.N.Y. Aug. 24, 2022) (quotations omitted), and "give special weight to the burden on non-parties of producing documents," *Henry v. Bristol Hosp., Inc.*, No. 3:13-CV-00826 (SRU), 2020 WL 1158464, at *1 (D. Conn. Mar. 10, 2020). "Determinations of issues of 'undue burden' are committed to the sound discretion of the trial court." *In re Motion to Quash Subpoenas to Non-Parties*, No. 6:22-CV-0319 (BKS/TWD), 2024 WL 4249212, at *2 (N.D.N.Y. Sept. 20, 2024).

"Subpoenas served on non-parties are subject to the relevance and proportionality requirements of Rule 26(b)(1)." *Gilead Scis.*, 755 F. Supp. 3d at 296. Rule 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party issuing a subpoena bears the burden of demonstrating that the information sought is relevant. *Kingsway Fin. Servs. Inc.*, 2008 WL 4452134, at *4. "Once the party issuing the subpoena demonstrates the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Id.*

## B.   Application

As a threshold matter, the Court addresses Plaintiff's arguments that Mark's

objections to the subpoena are "untimely and inappropriate" because "he never filed an affirmative motion or a cross motion to quash[,]" and that "there is no justification, or adequate excuse, for . . . Mark's refusal to produce the subpoenaed documents" because "he could have filed a motion to quash the Subpoena, which he did not do." (Dkt. 38 at 6; Dkt. 32-2 at 8).

Foremost, "nothing in Rule 45 requires a formal motion." *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2020 WL 3453452, at *5 n.6 (S.D.N.Y. June 24, 2020). "[S]erving written objections is a less formal, easier, usually less expensive method of forestalling subpoena compliance when compared to the separate option of filing a motion to quash[.]" *Bounkhoun v. Barnes*, No. 15-CV-631A, 2019 WL 3927263, at *1 (W.D.N.Y. Aug. 20, 2019). "[S]ervice of objections . . . end[s] the need to comply with [a] subpoena, absent a successful motion to compel." *Id.* at *2.

Here, Mark provided Plaintiff with written objections on September 2, 2025 (*see* Dkt. 32-6), which was the date "that his responses and related document production . . . were due . . . after Plaintiff-granted extensions[.]" (Dkt. 38 at 5). However, Mark's objections were untimely insofar as "objection[s] must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). That is, Mark's objections were due within 14 days of being served with the subpoena, rather than the later date of compliance.

"The failure to serve written objections to a subpoena within the time specified by Rule 45[ ] typically constitutes a waiver of such objections." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996). Nevertheless, courts find good

cause to overlook the failure to timely serve written objections in circumstances where: (1) "the subpoena is overbroad on its face and exceeds the bounds of fair discovery"; (2) "the subpoenaed witness is a non-party acting in good faith"; and (3) "counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena." *Id.* (quotations and citations omitted).

The Court finds that these three factors are all present here. First, as discussed in more detail below, Plaintiff's subpoena is facially overbroad and accordingly "requests production of material . . . beyond the scope of permissible discovery." *Erie Cnty. Dist. Attorney's Off. v. Gugino,* No. 21-CV-283V(F), 2021 WL 4172876, at \*3 (W.D.N.Y. Sept. 14, 2021). Second, the Court finds that Mark, a non-party, has acted in good faith in attempting to comply with Plaintiff's subpoena notwithstanding his objections. Third, and relatedly, Mark's counsel and Plaintiff's counsel had extensive discussions about Mark's compliance with the subpoena prior to Plaintiff filing its motion to enforce. Consequently, the Court concludes that Mark's objections have not been waived and the Court reaches the merits thereof.

### i.    Request No. 1

In reviewing Plaintiff's motion papers, it is somewhat unclear whether Plaintiff is seeking further documents in response to Request No. 1. Plaintiff acknowledges that Mark produced a set of documents responsive to Request No. 1 on September 2, 2025, and describes Requests No. 2 and 3 as "the remaining requests in the Subpoena." (Dkt. 32-2 at 6; Dkt. 32-3 at ¶¶ 10-12; *see also* Dkt. 32-8 at 2-3). But

Plaintiff does not affirmatively state in its motion papers that it only seeks to enforce compliance with Requests No. 2 and 3, and refers to its requested relief as merely an order directing Mark "to comply with Plaintiff's subpoena dated July 25, 2025 and produce/disclose the documents requested therein." (Dkt. 32). The Court therefore addresses Request No. 1 in the interest of completeness.

Mark states that his September 2, 2025 production "comprised . . . all documents responsive to . . . Request No. 1." (Dkt. 37-3 at 14). Thus, to the extent Plaintiff's motion seeks to enforce the subpoena with respect Request No. 1, it is denied as moot. *See, e.g., Kochan*, 2022 WL 3648023, at *5 ("In reliance upon defense counsel's statement that all videos [responsive to the subpoena] have been produced to plaintiff . . . the motion to quash this subpoena is granted and the motion to compel is denied as moot.").

### ii.    <u>Request No. 2</u>

Request No. 2 seeks from Mark "any and all Documents . . . relating to or supporting your claims in the [NYS Litigation] which are also related to the [APA] which makes up the basis for this action and [the NYS Litigation]." (Dkt. 32-4 at 2).

Mark opposes Plaintiff's motion as to Request No. 2 on the grounds that the Request: (1) "is tantamount to a request for attorney work product, including counsel identification, selection, compilation, and analysis of documents"; (2) will impose an undue burden by "compelling Mark to disclose documents . . . before such disclosures are even due in the NYS [Litigation]"; (3) cannot be complied with insofar as "discovery is ongoing in the NYS [Litigation] [and] [h]ence, it is presently unclear

which documents will 'support' or 'relate to' Mark's claims in the NYS [Litigation]";
(4) would "prejudice Mark by giving Edwards insight into Mark's case and strategy
in the NYS [Litigation]" in the event Plaintiff produces the documents to Defendants
in the instant action; and (5) will likely require Mark to "reproduce back" documents
Mark previously subpoenaed from Plaintiff in the NYS Litigation. (Dkt. 37-3 at 14-
17).

Having considered Mark's objections, the Court finds that Request No. 2
should not be enforced. First, numerous courts have concluded that a request for "any
and all" documents concerning a particular subject is "inherently overbroad." *Gropper
v. David Ellis Real Est., L.P.*, No. 13 CIV. 2068 ALC JCF, 2014 WL 518234, at *4
(S.D.N.Y. Feb. 10, 2014) (collecting cases); *see also United States Sec. & Exch.
Comm'n v. Ahmed*, No. 3:15CV675 (JBA), 2018 WL 1541902, at *2 (D. Conn. Mar. 29,
2018) ("A large portion of the document requests seek the production of "all
documents" relating to various issues. Courts have often found that such blanket
requests are overbroad and impermissible.").

While, in some circumstances, the subject of a document request may be
specific enough to alleviate these overbreadth concerns, that is not the case here. If
the APA "makes up the basis" for the NYS Litigation, as the Request states, then
asking for any and all documents "relating to" (a term that the subpoena does not
define) Mark's "claims" (another undefined term) that are also "related to" (again
undefined) the APA "amounts to little more than a request to produce all documents

relating to the allegations in the Complaint, which is overbroad." *Acosta v. New York Times Co.*, No. 25 CIV. 1119 (JPC), 2025 WL 3250875, at \*2 (S.D.N.Y. Nov. 21, 2025).

Plaintiff asserts that the requested documents are "vital" to the issue of Mark's ownership interest in the PJD Entities. (*See* Dkt. 32-2 at 8). But by potentially sweeping in every document related to Mark's complaint—for which Mark's ownership interest merely serves as the backdrop—Request No. 2 fails to appropriately limit its scope to relevant documents. Further, given the expansive scope of Request No. 2, the Court agrees with Mark that compliance with the Request would be unduly burdensome, as it would essentially force Mark to engage prematurely in discovery in the NYS Litigation. The Court also agrees with Mark that because discovery is ongoing in the NYS Litigation, it is unclear how Mark can determine the entire universe of documents that support or relate to his claims.

For these reasons, the Court denies Plaintiff's motion to enforce the subpoena as to Request No. 2.[3]

### iii.    Request No. 3

Request No. 3 seeks "any and all communications between you and [Defendants] that concern [Plaintiff's] purchase of numerous assets of those

---

[3]    The Court declines to reach Mark's argument that Request No. 2 is tantamount to a request for attorney work product. While Plaintiff refers to this argument as "fanciful" and "absurd" (Dkt. 38 at 6, 7), "the Second Circuit has recognized that the work product doctrine can protect an attorney's selection and arrangement of documents in certain narrow circumstances, despite the fact that the documents themselves are not privileged[.]" *Kodak Graphic Commc'ns Canada Co. v. E.I. du Pont de Nemours & Co.*, No. 08-CV-6553T, 2012 WL 413994, at \*4 (W.D.N.Y. Feb. 8, 2012) (quotation omitted and citing *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)); *see also In re Cardinal Health, Inc.*

[D]efendants pursuant to the [APA] which makes up the basis for this action and [the NYS Litigation]." (Dkt. 32-4 at 2).

Mark opposes Plaintiff's motion as to Request No. 3 on the grounds that: (1) he was excluded from discussions regarding the APA, which "is the very point" of the NYS Litigation; (2) Plaintiff can obtain the communications from Defendants; and (3) "to the extent such communications exist, they would have been sent to or from Mark on his Vision email account," but "Mark is no longer an employee of Vision and, thus, has no access to that email account to even search for such communications." (Dkt. 37-3 at 18).

The Court concludes that it cannot enforce Request No. 3. In addition to the overbreadth concerns discussed above, "a subpoenaed party must produce only those

---

*Sec. Litig.*, No. C2 04 575 ALM, 2007 WL 495150, at \*4 (S.D.N.Y. Jan. 26, 2007) ("The Second Circuit has interpreted the work product doctrine to apply to the selection and compilation of otherwise unprotected materials in certain circumstances[.]"). To justify non-disclosure in such circumstances, "the party asserting the privilege must show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents[.]" *In re Grand Jury Subpoenas*, 318 F.3d at 386 (quotations omitted). Given that Mark's assertion of work product is based on the selection and compilation of documents, rather than the underlying documents themselves, it is seemingly made pursuant to the foregoing theory. Yet Mark does not cite this body of case law or address its specific standard for non-disclosure, and the Court is accordingly limited in determining whether Mark has met this standard. *See, e.g.*, *Hendrick v. Avis Rent A Car Sys., Inc.*, 916 F. Supp. 256, 259 (W.D.N.Y. 1996) ("In the absence of anything more specific than counsel's statement that his 'strategy and mental thoughts' would be revealed . . . I am not persuaded that work product doctrine provides relief [from disclosure]."). Even if the Court were to determine that Request No. 2 seeks work product, it would not be dispositive of the issue because work product protection is not absolute. In short, Plaintiff and Mark have not adequately briefed the issues raised by Mark's work product argument, and the Court finds that this aspect of Plaintiff's motion can be resolved on other grounds.

documents that are in its 'possession, custody, or control.'" *In re Application of CBRE Glob. Invs. (NL) B.V.*, No. 20-MC-315 (VEC), 2021 WL 2894721, at \*3 (S.D.N.Y. July 9, 2021) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). "[F]or the purposes of a Rule 45 subpoena, a document is within a witness's 'possession, custody, or control' if the witness has the practical ability to obtain the document." *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147 (S.D.N.Y. 2011). "The burden of demonstrating that the party from whom discovery is sought has the practical ability to obtain the documents at issue lies with the party seeking discovery." *Id.* at 148.

Here, Mark states that any responsive communications would be on his Vision email account, but he no longer has access to that account. Thus, Mark does not have the practical ability to obtain any communications that would be responsive to Request No. 3. Plaintiff's reply (Dkt. 38) fails to respond to or even mention Mark's representation that he lacks access to his Vision email account. Mark's counsel also states that he informed Plaintiff's counsel prior to Plaintiff filing this motion that "such communications would have been via Mark's email account at Vision but, because Mark was no longer an employee, he no longer had access to that email account." (Dkt. 37 at ¶ 19; *see also* Dkt. 32-6 at 6). Plaintiff was therefore on notice that Mark would likely raise his lack of access to these communications in responding to this motion.

Accordingly, Plaintiff fails to carry its burden of demonstrating that any responsive communications are in Mark's possession, custody, or control, and the Court denies Plaintiff's motion to enforce the subpoena as to Request No. 3.

## C.    <u>Attorney's Fees</u>

Both Plaintiff and Mark request an award of attorney's fees and costs incurred in connection with Plaintiff's motion to enforce the subpoena. (*See* Dkt. 32-2 at 11; Dkt. 37-3 at 21). Plaintiff also requests that Mark be held in contempt. (Dkt. 32-2 at 11).

Because the Court is not ordering Mark's compliance with Plaintiff's subpoena, it will not hold Mark in contempt or order that he pay Plaintiff's attorney's fees or costs. And in any event, courts generally do not "invoke contempt powers for failure to comply with a subpoena without the prior issuance of a court order compelling that compliance, particularly with respect to non-parties." *NXIVM Corp. v. Bouchey*, No. 1:11-MC-0058 GLS/DEP, 2011 WL 5080322, at \*3 (N.D.N.Y. Oct. 24, 2011).

With respect to Mark's request for attorney's fees, "Rule 45 directs district courts to 'impose an appropriate sanction—which may include . . . reasonable attorney's fees—on a party or attorney who fails to comply' with the Rule's mandate to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-02516 (SRU), 2017 WL 4679228, at \*3 (D. Conn. Oct. 18, 2017) (quoting Fed. R. Civ. P. 45(d)(1)). "Courts have awarded attorneys' fees for resisting a subpoena if (1) the subpoena imposed an undue burden on a non-party, and (2) the party requesting the subpoena failed . . . to carry out its Rule 45-mandated duty to take reasonable steps to avoid imposing an undue burden" on the nonparty. *Id.* However, "[t]he issuing of sanctions is discretionary—the court need not impose sanctions every time a motion to compel

is denied or a subpoena is found overbroad." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (3d ed. 2026).

Having considered the issue, the Court denies Mark's request for attorney's fees. First, while the Court overlooked Mark's untimely objections in reaching the merits of Plaintiff's motion, Mark's failure to serve timely objections militates against awarding him attorney's fees. Second, although the Court concluded that Request No. 2 is overbroad, Mark does not dispute that Plaintiff's subpoena seeks relevant documents. Moreover, as borne out by Plaintiff's motion to compel discovery from Defendants, Plaintiff was not unjustified in believing it needed to obtain these documents from Mark, given Defendants' prolonged failure to respond to Plaintiff's Discovery Demands. *See Strike 3 Holdings*, 337 F. Supp. 3d at 252 (determinations of undue burden take into account "relevance" and "the party's need for the information"). Lastly, the Court notes that Plaintiff would have been procedurally justified in moving to enforce the subpoena upon receiving Mark's objections on September 2, 2025, but continued to confer with Mark in an attempt to informally resolve the dispute without Court intervention. For these reasons, the Court declines to award Mark attorney's fees and costs incurred in responding to Plaintiff's motion to enforce.

## II.     Plaintiff's Motion to Compel

### A.     Legal Standard

If a party fails to answer an interrogatory under Rule 33 or fails to produce documents under Rule 34, the party seeking discovery may move for an order under

Rule 37(a)(3)(B) to compel an answer or production. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). "The burden of demonstrating relevance is on the party seeking discovery . . . Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Go New York Tours, Inc. v. Aurora Tourism Servs., LLC*, No. 22-CV-10633 DEHJW, 2023 WL 9111158, at *1 (S.D.N.Y. Dec. 20, 2023) (quotation omitted). "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'" *Harris v. Bronx Parent Hous. Network, Inc.*, No. 18-CV-11681 GBDSN, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting *U.S. v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

## B.    Application

There is no question here that Defendants have failed to fully respond to Plaintiff's Discovery Demands, which were first served on June 20, 2025. Defendants admit that they have not responded to Plaintiff's interrogatories. (Dkt. 44 at ¶ 9). In addition, the Court interprets defense counsel's statements that "Defendants [will] produce additional documents" and Edwards will "search his files and produce documents responsive to the Discovery Demands" (*Id.* ¶¶ at 7, 13) to mean that Defendants have not conducted the requisite search for all responsive documents and that Defendants' current production is incomplete. *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 19-CV-707WMS(F), 2022 WL 109352, at *2 (W.D.N.Y. Jan. 12, 2022) ("under Rule 34(a), a requested party must engage in a reasonably diligent search for all responsive documents") (citation omitted).

Plaintiff has also sufficiently demonstrated the relevance of the Discovery Demands, as is its burden, and Defendants have not disputed their relevance. Defendants, despite describing their response as being "in opposition to" to Plaintiff's motion to compel, do not indicate that they object in any way to the Discovery Demands. Moreover, there is nothing in the record indicating that they have previously interposed objections to the Discovery Demands.

The only explanation Defendants provide for their failure to respond is Edwards' health issues. Although the Court is sympathetic to these issues, it is apparent that an order compelling interrogatory responses and production of documents is needed at this point. It has been nearly a year since Defendants were served with the Discovery Demands. Defendants have not requested any form of stay from the Court but have instead twice volunteered (and failed to meet) deadlines by which they said they would respond. Defense counsel also specifically stated he would advise the Court if Defendants could not respond to the Discovery Demands by January 5, 2026, but defense counsel has made no such communications with the Court.

Further, Defendants' response to Plaintiff's motion to compel does not articulate what if any progress has been made in responding to the Discovery Demands. And while Defendants' response notes that Edwards is "the individual that has knowledge of relevant documents and information regarding the facts of this case" (Dkt. 44 at ¶ 10), Defendants have not clearly explained to the Court why they cannot utilize alternative means of obtaining the necessary documents, or whether

they have attempted any such efforts. Simply put, there is no reasonable basis to conclude that affording Defendants more time to respond will lead to a fair and speedy resolution of this dispute or obviate the need for further Court intervention.

Accordingly, Plaintiff's motion to compel is granted. Within 14 days of entry of this Decision and Order, Defendants shall fully respond to Plaintiff's interrogatories and produce all documents responsive to Plaintiff's requests for production. To the extent there are no additional responsive documents, Defendants must provide a sworn affidavit to Plaintiff stating that they conducted a diligent search and no additional responsive documents are in their possession, custody or control. *See, e.g.*, *Barbara v. CVS Albany L.L.C.*, No. 23-CV-03298 (JMA) (JMW), 2024 WL 3581237, at *5 (E.D.N.Y. July 30, 2024).

### C.   <u>Attorney's Fees</u>

Plaintiff requests that the Court award Plaintiff its reasonable attorney's fees and costs incurred in connection with the motion to compel. (Dkt. 40 at 8). Pursuant to Rule 37(a)(5)(A), if the Court grants a motion to compel discovery, it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). An award of expenses is mandatory under Rule 37(a)(5)(A) unless (i) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (ii) "the opposing party's nondisclosure, response, or objection was substantially justified"; or (iii) "other circumstances make

an award of expenses unjust." *Id.* The losing party bears the burden to show that one of these exceptions applies. *D'Angelo v. City of Lockport*, No. 119CV00221LJVMJR, 2021 WL 5111987, at \*2 (W.D.N.Y. Nov. 3, 2021).

Here, Plaintiff's request for attorney's fees and costs was clearly stated in its notice of motion and opening brief. (Dkt. 39; Dkt. 40). Defendants therefore had an opportunity to be heard on this issue but failed to address it in their response. *See, e.g., Wager v. G4S Secure Integration, LLC*, No. 1:19-CV-03547 (MKV) (KNF), 2021 WL 293076, at \*5 (S.D.N.Y. Jan. 28, 2021) ("It is evident therefore that Plaintiff's request for an award of expenses in her notice of motion and opening brief . . . put Defendant on notice that she intended to move to recover expenses in the event she succeeded on her motion and gave Defendant an opportunity to be heard on the issue of expenses, as required under Rule 37."). Furthermore, for the reasons discussed above, the Court has considered but does not find that Edwards' health issues make an award of attorney's fees unjust. And, notwithstanding Defendants' failure to show that one of Rule 37(a)(5)(A)'s exceptions applies, the Court, on its own, does not find any basis to deny Plaintiff's request for attorney's fees.

Plaintiff's request for attorney's fees and costs incurred in connection with its motion to compel is therefore granted. The parties are directed to brief the award of expenses in accordance with the schedule below.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to enforce its subpoena (Dkt. 32) is denied, as are Plaintiff's and Mark's requests for attorney's fees in connection with the motion to enforce (Dkt. 32 at 1; Dkt. 37-3 at 5).

Plaintiff's motion to compel and its request for attorney's fees in connection with the motion to compel (Dkt. 39) are granted. Within 14 days of entry of this Decision and Order, Defendants must fully respond to Plaintiff's interrogatories and produce all documents responsive to Plaintiff's requests for production (or provide a sworn affidavit to Plaintiff stating that they conducted a diligent search and no additional responsive documents are in their possession, custody or control).

Plaintiff must submit a sworn affidavit detailing the reasonable expenses, including attorney's fees, it incurred in litigating its motion to compel, accompanied by any documentation demonstrating its expenditures, by no later than 30 days from entry of this Decision and Order. Defendants will have 14 days upon the filing of Plaintiff's affidavit to submit a response. Plaintiff's reply shall be filed within seven days thereafter, at which time the Court will take the matter under advisement.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: May 21, 2026
    Rochester, New York